# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action Number |
| ) | 15-00127-01-CR-W-GAF |
| Royce D. Maple, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE SEIZED DURING UNLAWFUL INVENTORY SEARCH AND DEFENDANT'S STATEMENT AS FRUIT OF THE POISONOUS TREE (Doc. #15) filed on July 25, 2016, by defendant Royce D. Maple ("Maple"). On October 4, 2016, the undersigned held an evidentiary hearing on Maple's motion. Maple was present and represented by his counsel, Federal Public Defender Carie Allen. The government was represented by Assistant United States Attorney Jeff McCarther. At the evidentiary hearing, testimony was given by three witnesses: Officer Jordan Infranca, Detective John Mattivi, and Detective Frank Rorabaugh all with the Kansas City Missouri Police Department. Additionally, the following Government exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. Ex. 1 | Dash cam video |
| Gov't. Ex. 2 | KCPD Tow Policy |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. On July 26, 2014, Jordan Infranca was a patrol officer with the Kansas City, Missouri Police Department. Tr. at 4-5.

2. On that date, Officer Infranca was patrolling in the area of 70th Street and Prospect in Kansas City when, at approximately 6:12 p.m., he observed a white 2012 Dodge Avenger travelling at a high rate of speed (over the posted 25 mph) in a residential neighborhood. Tr. at 5, 7-8.

3. The ensuing pursuit of and encounter with the driver of the Avenger (Maple) was captured on a dashboard camera in Officer Infranca's patrol vehicle. Tr. at 5-6; Gov't Ex. 1.

4. After observing the Avenger, Officer Infranca began pursuit of the vehicle so as to conduct a traffic stop. Tr. at 8.

5. During the pursuit, the Avenger failed to come to a complete stop at a stop sign. Tr. at 8.

6. At the Avenger failed to stop at a stop sign, at 6:12:40, Officer Infranca activated the emergency lights on his vehicle. Tr. at 9; Gov't Ex. 1.

7. Six seconds after Officer Infranca activated his lights, the Avenger again failed to come to a complete stop at a stop sign at an intersection. Tr. at 10.

8. While the Avenger continued travelling, it passed locations where it could have been safely and legally parked. Tr. at 11-12.

9. Finally, approximately 20 seconds after Officer Infranca had activated his lights and after travelling approximately one block, the Avenger pulled into a residential driveway. Tr. at 12, 26; Gov't Ex. 1.

10. The Avenger was parked legally in the driveway. Tr. at 23.

11. The driver of the Avenger subsequently was identified as Maple. Tr. at 12.

12. Upon approaching the parked Avenger, Officer Infranca observed that a five-year-old boy was in the back seat playing a video. Tr. at 13, 26-27.

13. Officer Infranca had the boy exit the vehicle, whereupon the boy went into the residence. Tr. at 13, 27.

14. Officer Infranca then ordered Maple to get out of the Avenger in order to take him into custody. Tr. at 13, 28.

15. As Maple exited the Avenger, he locked the vehicle and tossed the keys to a woman who had emerged from the residence and was standing on the front porch. Tr. at 13, 29-30.

16. The woman was later identified as Montae Rimmer-Rouser. Tr. at 13-14.

17. At the time that Maple was stopped, he had five prior convictions for driving while his license had been revoked. Tr. at 15.

18. On July 26, 2014, Maple's license was also revoked. Tr. at 14-15.

19. Violations for driving while a license is revoked are treated as felonies after three convictions. Tr. at 15.

20. Officer Infranca placed Maple under arrest for the felony of driving while his license was revoked. Tr. at 15.

21. Maple informed Officer Infranca that he did not own the vehicle, but that the Avenger was his "wife's car." Tr. at 15.

22. Maple was not married on July 26, 2014. Tr. at 15.

23. Maple never claimed ownership of the vehicle nor demonstrated to Officer Infranca that he had permission to drive the Avenger. Tr. at 16.

24. After arresting Maple, Officer Infranca made the decision to have the Avenger towed pursuant to Annex A of the police "tow policy." Tr. at 16, 24.

25. The Kansas City Missouri Police Department's Procedural Instruction for TOWING/PROTECTIVE CUSTODY OF VEHICLES AND CONTENTS, Annex A, provides:

> Vehicles will be towed when the vehicle is known or believed to have been used in the commission of a crime and has evidentiary value, unless it is processed at the scene and can be released to the owner/operator.

Tr. at 17-18; Gov't Ex. 2.

26. Officer Infranca believed the Avenger had evidentiary value because "if [Maple] wasn't driving that vehicle, he wouldn't have committed those crimes." Tr. at 23.

27. Officer Infranca believed that towing the Avenger fell within this provision of the tow policy because of Maple's observed violation of numerous traffic laws (speeding, failure to stop at a stop sign, eluding arrest, driving while a license was revoked) and due to the fact that Maple was subject to an arrest for a felony (based on repeated violations of driving a vehicle while his license was revoked). Tr. at 18-19.

28. After arresting Maples, Officer Infranca told Ms. Rimmer-Rouser to give him the keys to the Avenger or he would have the vehicle towed. Ms. Rimmer-Rouser handed the keys to Officer Infranca. Tr. at 19, 24.

29. Officer Infranca unlocked the Avenger and performed an inventory search of the interior of the vehicle. Tr. at 19, 28.

30. In the course of the inventory search, Officer Infranca found a 9mm. handgun in the center console. Tr. at 20, 25.

31. The handgun was not in plain view. Tr. at 25.

32. Based on his training experience as a law enforcement officer, Officer Infranca believed that a driver who refuses to pull over during an attempted traffic stop could be hiding contraband in the vehicle. Tr. at 20-22.

33. Maple was then transported to the police station where he was booked for traffic violations and possession of a firearm. Tr. at 22.

34. On July 26, 2014, John Mattivi and Frank Rorabaugh were detectives with the Kansas City, Missouri Police Department. Tr. at 37, 41.

3

35. On that date, Det. Mattivi interviewed Maple when he was brought into the police station following his arrest. Tr. at 37.

36. Prior to conducting the interview, Det. Mattivi apprised Maple of his *Miranda* rights. Tr. at 38.

37. Maple told Det. Mattivi that he understood his rights and signed a written waiver of the rights. Tr. at 38.

38. Subsequently, during the interview with Det. Mattivi, Maple stated that the Avenger belonged to his girlfriend, that he had pulled the vehicle into his girlfriend's driveway, and that he may have inadvertently come into contact with the firearm found in the Avenger. Tr. at 38-39.

39. The next day, July 27, 2014, Det. Rorabaugh also interviewed Maple. Tr. at 42.

40. Prior to conducting the interview, Det. Rorabaugh apprised Maple of his *Miranda* rights. Tr. at 42.

41. Maple told Det. Rorabaugh that he understood his rights and signed a written waiver of the rights. Tr. at 42.

42. Subsequently, during the interview with Det. Rorabaugh, Maple stated that the gun belonged to his child's mother, Ms. Rimmer-Rouser. Tr. at 43.

43. Maple also told Det. Rorabaugh that the Avenger belonged to Ms. Rimmer-Rouser and that he driven the car on other occasions. Tr. at 43.

## PROPOSED CONCLUSIONS OF LAW

In his motion to suppress, Maple challenges the admissibility of any evidence (namely the handgun) obtained during the warrantless search of the Avenger, as well as the fruits of that search (namely subsequent statements made by Maple to law enforcement officers). With regard to the search of the Avenger, without question, individuals possess a privacy interest in their property that is protected by the Fourth Amendment. *See*, *e.g.*, *United States v. Gwinn*, 191 F.3d 874, 878 (8th Cir. 2000). As protection for citizens from unwarranted government intrusion, the Fourth Amendment generally requires officers to obtain a court-sanctioned search warrant based on probable cause before searching private property. *See*, *e.g.*, *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1059 (8th Cir. 2000).

The Fourth Amendment provides that "the right of the people to be secure in their[1] persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only unreasonable searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). As previously noted, in many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, Officer Infranca did not have a warrant to search the Avenger. The Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967)). In the present case, the government seeks to justify the search of the Avenger under three different theories: (1) an inventory search precedent to a proper impoundment; (2) the automobile exception, and/or (3) a reasonable suspicion of dangerousness.[2] The Court will address each theory in turn.

---

[1] In supplemental briefing with the Court, the government suggests that Maple failed to offer evidence to establish that he has any standing to challenge a search of the Avenger. It is axiomatic that Fourth Amendment rights are personal, and a defendant moving to suppress a search has the burden of proving a reasonable expectation of privacy in the area searched. *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). In the context of the search of an automobile, a "defendant must present at least some evidence of consent or permission from the lawful owner/renter to give rise to an objectively reasonable expectation of privacy." *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995) (*emphasis added*). In this case, although the evidence is somewhat indirect, the Court concludes that there was at least some evidence that Maple was operating the Avenger with the consent or permission of the owner, Ms. Rimmer-Rouser, sufficient to infer to Maple an objectively reasonable expectation of privacy in the vehicle and its contents.

[2] It should be noted that the government does not rely upon consent to justify the search of the Avenger. As set forth in the findings of facts, Officer Infranca never sought

5

In many divergent circumstances, law enforcement officials – as part of their community caretaking function – are authorized to impound a suspect's vehicle. *United States v. Petty*, 367 F.3d 1009, 1011-12 (8th Cir. 2004). Moreover, when taking custody of property such as a suspect's vehicle, law enforcement officers may conduct a warrantless search and inventory of the contents of the vehicle in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger. *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741 (1987). The central inquiry in determining whether such a warrantless inventory search is reasonable is a consideration of the totality of the circumstances. *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir. 1993). To that end, "inventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." *Id*. Consequently, to be constitutional, "[a] warrantless inventory search must be done pursuant to standard police procedures and for the purpose of protecting the car and its contents." *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998).[3]

In this case, Officer Infranca relied on one particular provision of the KANSAS CITY MISSOURI POLICE DEPARTMENT'S PROCEDURAL INSTRUCTION FOR TOWING/PROTECTIVE CUSTODY OF VEHICLES AND CONTENTS to justify the decision to impound (and correspondingly inventory) the Avenger. Specifically, Officer Infranca relied on Annex A of the tow policy, which provides:

> Vehicles will be towed when the vehicle is known or believed to have been used in the commission of a crime and has evidentiary value, unless it is processed at the scene and can be released to the owner/operator.

This provision has two fundamental components: (1) the vehicle was used in the commission of a crime, and (2) the vehicle has evidentiary value. Obviously, the first required is met in this case. With regard to the second, the following colloquy occurred at trial:

---

consent from either Maples nor Ms. Rimmer-Rouser, but rather demanded the keys from Ms. Rimmer-Rouser along with a threat to tow the Avenger if she did not provide them.

[3] The reliance on written policies is designed "to ensure that impoundments and inventory searches are not merely a ruse for general rummaging in order to discover incriminating evidence." *Petty*, 367 F.3d at 1012.

6

| THE COURT: | Sir, you were asked * * * about the general towing requirements * * *. What evidentiary value did this car have? |
|---|---|
| INFRANCA: | The vehicle – if he wasn't driving that vehicle, he wouldn't have committed those crimes. So him driving the vehicle adds – the vehicle adds evidence to him proving that he was driving that vehicle at the time he committed those crimes. |

The Court does not find this testimony establishes the evidentiary value of the Avenger. Essentially, Officer Infranca would conflate the two requirements of the tow policy into a single element: if a vehicle was used in the commission of a crime, it has evidentiary value. *Compare United States v. Pappas,* 735 F.2d 1232, 1234 (10th Cir.1984) (impoundment "cannot be used to justify the automatic inventory of every car upon the arrest of its owner"). The tow policies explicitly lists two <u>separate</u> requirements and the Court will treat compliance with the tow policy as requiring two <u>separate</u> requirements. The Court concludes that the Avenger was not subject to towing under Annex A of the KANSAS CITY MISSOURI POLICE DEPARTMENT'S PROCEDURAL INSTRUCTION FOR TOWING/PROTECTIVE CUSTODY OF VEHICLES AND CONTENTS.[4]

Indeed, impoundment of the Avenger in this case, under these facts, does not fall within the police's community caretaking responsibilities. At the time and place of the traffic stop, the Avenger was parked in the driveway of the residence where the vehicle's owner (Ms. Rimmer-Rouser) resided. The community caretaking rationale was wholly absent – the vehicle had not been in an accident, was not parked illegally, was not trespassing on private property, and was not "impeding traffic or threatening public safety and convenience." *South Dakota v. Opperman*, 428 U.S. 364, 368-69, 99 S.Ct. 3092, 3097 (1976).

---

[4] As well, the Court has reviewed the tow policy and does not find any other provision to be applicable.

7

Similar conclusions have been reached in other cases. For instance, in *United States v. Ceruti*, 827 F.Supp.2d 1036 (W.D. Mo. 2011), another judge in this District concluded that a warrantless search of a vehicle could not be justified as an inventory search, reasoning:

> [T]he plan on [the day of the arrest] was to stop defendant in his car and arrest him on the outstanding traffic warrant. Had that been accomplished before defendant got to [his house], the car would have been left unattended on a public street and it could lawfully have been inventoried and towed. However, because defendant arrived at [the house] before police did, once he was arrested the car was parked in the driveway of a residence at which police knew defendant stayed each time he came to Kansas City. The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy. In this case, no standard policy provided authority to inventory and tow defendant's car.

*Id.* at 1046. *See also Miranda v. City of Cornelius*, 429 F.3d 858, (9th Cir. 2005).[5]

Notwithstanding the foregoing conclusion, however, the Court also recognizes that the Eighth Circuit has cautioned:

> Even if police fail to adhere to standardized procedures, search is nevertheless reasonable provided it is not a pretext for an investigatory search. "Something else" must be present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function, in searching the defendant's vehicle.

---

[5] The Court in *Miranda*, citing to *Opperman*, reasoned:

> [A] decision to impound a vehicle after the driver has violated a vehicle regulation must consider the location of the vehicle, and whether the vehicle was actually "impeding traffic or threatening public safety and convenience" on the streets, such that impoundment was warranted. [W]hen [the officer] issued citations and called for the vehicle to be impounded, the vehicle was already parked in the [suspect's] home driveway. . . . Under these circumstances, the [suspect's] car was not creating any impediment to traffic or threatening public safety. An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers.

*Miranda*, 429 F.3d at 865-66.

8

*United States v. Taylor*, 636 F.3d 461, 465 (8th Cir. 2011). *Rowland,* 341 F.3d at 780–81. Here, the "something else" is found in Officer Infranca's testimony at the suppression hearing.

> GOV'T COUNSEL: And in your training and experience, have you found that many of the individuals who refused to pull over [in a traffic stop] are hiding contraband in their vehicles?
>
> INFRANCA: Most are, yes.
>
> \* \*\*
>
> GOV'T COUNSEL: What did you think was in that car?
>
> INFRANCA: There could have been something illegal in that car.

The Court concludes that the warrantless search of the Avenger cannot be justified as an inventory search associated with a legal impoundment and that the search of the Avenger was triggered by an investigatory motive looking for evidence.[6]

Before turning to the remaining Government arguments, the Court will also briefly address one of the points raised by the Government regarding the inventory search, namely, that Maple should not benefit from his decision to not pull over immediately and instead proceed to the "sanctuary" of his private driveway. There is merit to the Government's argument. However, in this case, the Court does not find Maple's conduct so extreme as to carve out a special rule. Maple drove approximately one block after Officer Infranca activated his lights – a reasonable decision in light of the fact that there was five-year old in the back seat of the car. As Officer Infranca admitted in his testimony, had Maple pulled over – even a half a block from his residence – law enforcement would have needed to take charge of the young boy during the

---

[6] To be clear, the Court acknowledges that "[t]he presence of an investigative motive does not invalidate an otherwise valid inventory search." *United States v. Garner*, 181 F.3d 988, 991 (8th Cir. 1999). However, such a motive becomes problematic when the inventory search is not valid.

9

arrest of Maple, including possibly transporting the boy to the police station until he could be picked up by his mother. Under these unique circumstances, the Court does not find that Maple's 20-second delay in pulling over requires an expansion of the impoundment rule.

The "automobile exception" authorizes law enforcement officers "to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (*quoting United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004)). The Supreme Court has justified this departure from the traditional warrant requirement because of the lower expectation of privacy in vehicles and also their unique mobility. *California v. Carney*, 471 U.S. 386, 390-91, 105 S.Ct. 2066, 2069 (1985). Nonetheless, the Court has repeatedly limited the scope of this potentially broad exception to the warrant requirement by requiring a showing of probable cause. And in that regard, probable cause to search an automobile only "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009). In this case, the Court does not find that Officer Infranca had probable cause to believe that the Avenger contained contraband or evidence of a crime based on Maple's traffic violations or his 20-second delay in pulling his vehicle over.[7] *Compare United States v. Neumann,* 183 F.3d 753, 756 (8th Cir. 1999) (when law enforcement officers have smelled the odor of illegal drugs emanating from a vehicle, then "there was a reasonable probability [drugs were] located inside the vehicle and the officers had probable cause to search the entire vehicle for illegal drugs").

---

[7] Whatever concerns that a reasonable officer might have had after the Avenger failed to pull over immediately must also include the officer learning that a young boy was in the vehicle and that the car had returned to the boy's home before stopping.

10

Prior to 2009, the search of the Avenger might have been valid as a "search incident to an arrest." Prior to that date, the Eighth Circuit had generally concluded that if officers had probable cause to arrest a driver, the officers had the right to not only search the driver's person incident to the arrest, but also to search the passenger compartment of his vehicle. *United States v. Poggemiller*, 375 F.3d 686, 687 (8th Cir. 2004) ("Under [*New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981)], when a police officer makes a lawful custodial arrest of an automobile's occupant, the Fourth Amendment allows the officer to search the vehicle passenger compartment as a contemporaneous incident of arrest.").

In 2009, however, the Supreme Court limited this broad exception to the warrant requirement when it issued its opinion in *Arizona v. Gant*, *supra*, and held that officers "may search a vehicle incident to a recent occupant's arrest <u>only</u> if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351, 129 S.Ct. at 1723 (*emphasis added*). *Gant* thus permits a warrantless search of a vehicle incident to a driver's arrest in only two circumstances. First, arresting officers are permitted to search the passenger compartment of a vehicle when an arrestee "is within reaching distance of the passenger compartment at the time of the search." In this case, Maple was not within reaching distance at the time of search of the Avenger. Additionally, the passenger compartment of the Avenger was locked and Maple did not have the keys. The second application of *Gant* permits an officer to conduct a vehicle search incident to an arrest where "it is reasonable to believe the vehicle contains evidence of the offense of arrest." In this case, there is no indication that the Avenger was searched because of a belief that it contained evidence related to the crime for which Maple was initially arrested (multiple incidents of driving while his license was suspended).

11

The narrow exceptions found by *Gant* – although a significant scaling back in the scope of a permissible search incident to an arrest – did not impact the constitutional propriety of another exception to the warrant requirement – a "protective search" of vehicles. In this line of cases – relied upon by the Government herein – the "reasonable suspicion" analysis of *Terry* has been extended to certain vehicle searches.

In *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480-81 (1983), the Court held:

> [P]rotection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id*. Moreover, in applying *Long*, the Eighth Circuit has found "once reasonable suspicion is established, a protective search of a vehicle's interior is permissible regardless of whether the occupants have been removed from the vehicle." *United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011). Indeed, in *Long*, the Supreme Court itself specifically rejected an argument that a protective vehicle sweep was not reasonable inasmuch as the suspect "was effectively under [law enforcement] control during the investigative stop and could not get access to any weapons that might have been located in the automobile." *Long*, 463 U.S. at 1051, 103 S.Ct. at 3482. The Supreme Court found such reasoning "mistaken" inasmuch as:

12

> During any investigative detention, the suspect is "in the control" of the officers in the sense that he may be briefly detained against his will. Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in [the suspect's] position break away from police control and retrieve a weapon from his automobile. In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. <u>Or, as here, the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons</u>.

*Id*. at 1051-52, 103 S.Ct. at 3482 (*emphasis added*).

Reckless application of the *Long* protective search rule has the potential to effectively eviscerate the general warrant requirement of the Fourth Amendment when a vehicle stop is undertaken by law enforcement officers. Unlike the limitations imposed on a valid "automobile search" and a "search incident to arrest," the *Long* protective search rule[8] (like the *Terry* analysis) is constrained only by the reasonable suspicion requirement.

In this case, however, the Court concludes that Officer Infranca did not have the requisite reasonable suspicion to conduct a protective search of the passenger compartment of the Avenger. At the time of the search, Officer Infranca had observed the Avenger speeding, rolling through past two stop signs, being operated by a driver with a suspended license, and travelling nearly a block before stopping in response to the officer's activation of his vehicle emergency lights. While the foregoing justified a stop of the vehicle, they do not – in considering the totality of the circumstances – justify a reasonable suspicion that there were weapons in the car. Also, as previously noted, the passenger compartment of the Avenger was locked and Maple no longer had possession of the keys.

---

[8] The Eighth Circuit has noted that in adopting the limitations on a search of a vehicle incident to arrest, the Supreme Court "left [the holding in *Long*] untouched." *United States v. Goodwin–Bey*, 584 F.3d 1117, 1120 (8th Cir.2009) (*citing Arizona v. Gant*, 556 U.S. at 346-47, 129 S.Ct. at 1721).

13

Because the Court concludes that the search of the Avenger was not justified by any exception to the warrant requirement of the Fourth Amendment, the Court finds that the search of the vehicle and the ensuing seizure of the handgun were unconstitutional. As a result, the handgun is suppressed from evidence to be used against Maple. Moreover, the ensuing questioning of Maple about the gun directly arises from the illegal search and, as such, must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417 (1963).

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **GRANTING** Maple's MOTION TO SUPPRESS EVIDENCE SEIZED DURING UNLAWFUL INVENTORY SEARCH AND DEFENDANT'S STATEMENT AS FRUIT OF THE POISONOUS TREE (Doc. #15) filed on July 25, 2016.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**
